IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MICHAEL KENNETH GARNER,

    Plaintiff,

v.                                                                          Civ. No. 21-905 GBW

KILOLO KIJAKAZI, *Acting Commissioner of the Social Security Administration*,

    Defendant.

## ORDER DENYING REMAND

This matter comes before the Court on Plaintiff's Motion to Remand the Social Security Agency ("SSA") decision to deny Plaintiff Social Security Disability Insurance benefits ("SSDI"). *Doc. 20*. For the reasons explained below, the Court DENIES Plaintiff's motion and AFFIRMS the judgment of the SSA.

### I.    PROCEDURAL HISTORY

Plaintiff filed an initial protective application for SSDI on July 12, 2018, alleging disability beginning July 11, 2017. Administrative Record ("AR") at 256. Plaintiff's application was denied on initial review on January 24, 2019, AR at 80, and again on reconsideration on June 20, 2019, AR at 94. On October 7, 2020, a hearing was held by an Administrative Law Judge ("ALJ"). AR at 44-79. The ALJ issued an unfavorable decision on October 26, 2020. *See* AR at 28, 31. Plaintiff sought review from the

Appeals Council, which denied review on July 23, 2021, AR at 1, making the ALJ's denial the Commissioner's final decision, *see* 20 C.F.R. §§ 404.981, 422.210(a).

On September 15, 2021, Plaintiff filed suit in this Court, seeking review and reversal of the ALJ's decision.  *See doc. 1*.  On April 25, 2022, Plaintiff filed his Opposed Motion to Reverse or Remand.  *See doc. 20*.  The Commissioner responded on June 21, 2022.  *See doc. 22*.  Briefing on Plaintiff's Motion was complete on July 10, 2022, *see doc. 24*, with the filing of Plaintiff's reply, *see doc. 23*.

II.     **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the Commissioner only to determine whether it (1) is supported by "substantial evidence" and (2) comports with the proper legal standards.  *Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 800–01 (10th Cir. 1991).  "In reviewing the ALJ's decision, [the Court] neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency."  *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted).

"Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Casias*, 933 F.3d at 800 (internal quotation marks omitted).  "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to

discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1010. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Indeed, the substantial evidence standard is met unless the evidence on which the ALJ relied is "overwhelmed by other evidence in the record or constitutes mere conclusion." *See Grogan*, 399 F.3d at 1261-62 (quoting *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992)).

### III.   ALJ Evaluation

#### A. Legal Standard

For purposes of Social Security Disability Insurance benefits, an individual is disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To determine whether a person satisfies these criteria, the SSA has developed a five-step test. *See* 20 C.F.R. §

404.1520. If the Commissioner finds an individual disabled at any step, the next step is not taken. *Id.* § 404.1520(a)(4).

At the first four steps of the analysis, the claimant has the burden to show: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and that either (3) his impairments meet or equal one of the "Listings" of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." *Id.* § 404.1520(a)(4)(i–iv); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

Step four of this analysis consists of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity ("RFC") in light of "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). A claimant's RFC is "the most [he or she] can still do despite [physical and mental] limitations." *Id.* § 404.1545(a)(1). Second, the ALJ determines the physical and mental demands of the claimant's past work. "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Winfrey*, 92 F.3d at 1024 (quoting Social Security Ruling (SSR) 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982)). Third, the ALJ

determines whether, in light of the RFC, the claimant is capable of meeting those demands. *Id.* at 1023, 1025.

If the ALJ concludes that the claimant cannot engage in past relevant work, he or she proceeds to step five of the evaluation process. At step five, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### B. The ALJ's Decision

On October 26, 2020, the ALJ issued a decision denying Plaintiff's application for SSDI benefits. *See* AR at 28. In denying Plaintiff's application, the ALJ applied the five-step sequential analysis. At step one, the ALJ found that Plaintiff "did not engage in substantial gainful activity during the period from his alleged onset date of July 11, 2017 through his date last insured of March 31, 2020." *Id.* at 33. At step two, he found that Plaintiff has the following severe impairments: "Peripheral Neuropathy, Diabetes Mellitus, and Degenerative Joint Disease." *Id.* He also noted that Plaintiff has other medically determinable impairments, including retinopathy, substance addiction disorder, and depression and anxiety, but the ALJ found these impairments to be non-severe. *Id.* at 33-34. At step three, the ALJ found that Plaintiff's severe impairments—both individually and in combination—did not meet or equal the severity of an

impairment in the Listings. *Id.* at 34-35.

At step four, the ALJ found that Plaintiff has the RFC to perform work with a light exertional capacity, subject to several physical limitations. AR at 36. With respect to physical limitations, the ALJ found that Plaintiff should be limited to occasionally reaching overhead with the right upper extremity and that he should avoid frequent exposure to unprotected heights, unprotected moving mechanical parts, dangerous machinery, open bodies of water, open flames, and operating commercial vehicles. *Id.* The ALJ found, however, that Plaintiff may frequently handle and finger bilaterally, and that he can read ordinary newspaper or book print. *Id.* The ALJ did not include any mental limitations in Plaintiff's RFC.

In making these findings, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms, but that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and the other evidence in the record. AR at 36. The ALJ found the medical findings of Doctors Walker, Ryan, Tomak, and Leong to be somewhat unpersuasive. *Id.* at 36-37. He found the assessment of Plaintiff by Dr. Rodriguez somewhat persuasive and the assessment of Plaintiff by Dr. Gallegos persuasive. *See id.* at 37.

## IV.   ANALYSIS

Plaintiff's asserts the ALJ's decision should be remanded because (1) the ALJ failed to consider all of the relevant evidence in accordance with Social Security Ruling 16-3P when he evaluated Plaintiff's symptom allegations, *see doc. 20* at 19-22; (2) the ALJ failed to explain why he declined to include mental limitations in Plaintiff's RFC, *see id.* at 22-23; (3) the ALJ's assessment of the severity of Plaintiff's mental impairments was flawed, *see id.* at 22, in part because the ALJ failed to properly evaluate Plaintiff's mental health symptoms which are caused by his Type I diabetes in combination with his other mental health symptoms, *see id.* at 23-25; and (4) the ALJ did not consider relevant evidence when determining the persuasiveness of the medical opinions of consultative examiner, Alysha Gallegos, *see id.* at 25-26.  Defendant disputes each of these arguments.  *See generally doc. 22*.  For the reasons explained below, the Court agrees with Defendant.

### A.   The ALJ Did Not Commit Legal or Factual Error When He Evaluated Plaintiff's Symptom Allegations

SSA regulations prescribe a two-step process for evaluating a claimant's statements about their symptoms.  Step one asks "whether there is an underlying medically determinable . . . mental impairment(s) that could reasonably be expected to produce [the] individual's symptoms."  SSR 16-3P, 2017 WL 5180304, at *3 (Oct. 25, 2017); 20 C.F.R. § 404.1529(b).  If such an impairment is established at step one, step two

requires the ALJ to "evaluate the intensity and persistence of [those] symptoms" to determine the extent to which the symptoms limit an individual's "capacity for work." 20 C.F.R. § 404.1529(c)(1). In making the step two assessment, the agency "consider[s] all of the available evidence from [the individual's] medical sources and nonmedical sources about how [his or her] symptoms affect [him or her]," including medical opinions, objective medical evidence, and "any other information [the individual] may submit about [his or her] symptoms." *Id.* at § 404.1529(c)(1)-(3).

During the step two assessment, the ALJ will first assess whether the "individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings." SSR 16-3P, 2017 WL 5180304, at *5. If the ALJ finds that the individual's symptom statements are not "substantiate[d]" by the objective medical evidence, the ALJ may not "disregard" the individual's statements but must instead "carefully consider other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms." *Id.* at *5-6.

The ALJ's final evaluation of an individual's symptoms must avoid "conclusory" findings, and it must include "specific reasons for the weight given to the individual's symptoms." SSR 16-3P, 2017 WL 5180304, at *10. Although the ALJ's reasoning must be "clearly articulated so the individual and any subsequent reviewer can assess how

the adjudicator evaluated the individual's symptoms," *id.*, the ALJ does not need to complete a "formalistic factor-by-factor recitation of the evidence," *see Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

Plaintiff argues that the ALJ's evaluation of Plaintiff's self-reported symptoms was flawed because the ALJ did not consider four pieces of evidence that supported Plaintiff's symptom allegations: (1) the results from Plaintiff's Mini Mental State Examination (MMSE), (2) Plaintiff's sister's written observations of Plaintiff's seizure symptoms, (3) Dr. Young-Rodriguez's objective medical findings regarding Plaintiff's limitations with pronation and supination of his right forearm, and (4) Plaintiff's "constantly out of control blood sugar and A1c." *See doc. 20* at 19-22.

The ALJ's assessment of Plaintiff's symptoms was legally sufficient. In his opinion, the ALJ indicated that Plaintiff reported symptoms due to his "Diabetes, Neuropathy, and pain," but found that Plaintiff's statements "concerning the intensity, persistence, and limiting effects of these symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record." AR at 35-36. The ALJ then provided specific reasons for why he did not find the medical evidence to be entirely supportive of Plaintiff's symptom allegations. *See id.* at 36 (citing evidence showing that Plaintiff's diabetes is "improv[ing]," Plaintiff "demonstrated full grip strength and the ability to use his hands to grasp and manipulate," and that Plaintiff "exhibited normal

manner and approach and exhibited only mild depression and some signs of anxiety"). The ALJ was "not required to discuss every piece of evidence" that contributed to his findings, including the four pieces of evidence identified by Plaintiff. *See Clifton*, 79 F.3d at 1009-10. Because the ALJ's stated reasons are sufficient for the Court to "assess how the adjudicator evaluated [Plaintiff's] symptoms," the ALJ did not commit a legal error in his determination regarding Plaintiff's symptoms. SSR 16-3P, 2017 WL 5180304, at *10

The ALJ's conclusion regarding Plaintiff's symptom allegations was also supported by substantial evidence, and the four pieces of evidence that Plaintiff cites do not persuade the Court otherwise. Although the four pieces of evidence that Plaintiff cites provide support for Plaintiff's allegations that he suffers from mental impairments, *see, e.g.*, AR at 59, 63, 70, diabetes-related symptoms, *see, e.g., id.* at 59, and right arm pain, *see id.* at 62, this evidence does not overwhelm the evidence that the ALJ relies upon in his determination that Plaintiff's symptom allegations are not consistent with the medical record. Specifically, the ALJ described medical evidence of Plaintiff's relatively mild mental health impairments, noted that Plaintiff's diabetes is "improv[ing]" because the record shows that Plaintiff has experienced a reduction in his A1c levels,[1] and described evidence of Plaintiff's ability to "use his hands to grasp

---

[1] Plaintiff argues that the ALJ committed a "meaningful error" when he stated that Plaintiff's "A1c has run from a high of 1.7 to currently around 8.5, indicating improvement." *Doc. 20* at 21 (referencing AR at

and manipulate." *Id*. at 36.  The Court will not substitute its judgment for that of the ALJ by reweighing the evidence related to Plaintiff's symptom allegations.

### B. The ALJ Did Not Commit Legal Error When He Declined to Include Any Mental Limitations in the RFC

At step three, the ALJ determines whether an individual's mental impairments meet or medically equal the criteria for a mental disorder listing in part by "assess[ing] [the] individual's limitations and restrictions from a mental impairment(s) in categories identified in the 'paragraph B' and 'paragraph C' criteria of the adult mental disorder listings." SSR 96-8p, 1996 WL 374184, at *4.  Paragraph B criteria "represent the areas of mental functioning a person uses in a work setting," include "interact[ing] with others" and "concentrat[ing], persist[ing], or maintain[ing] pace," and are evaluated "on a five-point rating scale consisting of none, mild, moderate, marked, and extreme limitation." 20 C.F.R. pt. 404, subpt. P, app. 1, listing 12.00.F.2.

At step four, the ALJ determines the claimant's RFC, which is "the most [he] can still do despite [physical and mental] limitations," based on "all of the relevant medical and other evidence," 20 C.F.R. § 404.1545(a)(1), (3).  For the RFC, the ALJ will assess the "nature and extent of [the claimant's] mental limitations and restrictions. *Id*. at §

---

36).  While the evidence does not reflect that Plaintiff has ever experienced an A1c level of 1.7, the Court finds that the ALJ's opinion included a typo and that the ALJ intended to write 12.7 instead of 1.7.  The Court reaches this conclusion because evidence from the record which the ALJ cited directly after the sentence indicates that Plaintiff's A1c level was 12.7 in June of 2018.  *See* AR at 36 (citing AR at 445).  In addition, the grammatical structure of the ALJ's sentence makes more sense if 1.7 is changed to 12.7.

11

404.1545(c). "A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions . . . may reduce [the claimant's] ability to do past work and other work." *Id*. The ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

Plaintiff argues that the ALJ erred by declining to include any mental restrictions in Plaintiff's RFC at step four despite finding at step three that Plaintiff had mild limitations and despite other evidence that Plaintiff suffers from "meaningful mental limitations" such as the "markedly abnormal [mental status exam], [his] prescription medication, and his testimony." *Doc. 20*.

The Tenth Circuit has held that there is no need for ALJs to explicitly incorporate mild or moderate mental limitations found at steps two and three into the RFC at step four. *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015) (a "finding of a moderate limitation . . . at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment"); *Suttles v. Colvin*, 543 F. App'x 824, 826-27 (10th Cir. 2013) (holding that the ALJ's finding of a mild limitation at step two "[did] not apply at later steps"). However, the ALJ "must consider the combined effect of all of the claimant's medically determinable impairments, *whether severe or not severe*" when determining the RFC. *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013). In

other words, "a finding of non-severity alone would not support a decision to prepare an RFC assessment omitting any mental restriction." *Id.*

In this case, the ALJ found at step three that Plaintiff suffered from mild (nonsevere) limitations in understanding, remembering, or applying information, interacting with others, concentrating, persisting, and maintaining pace, and adapting and managing himself. AR at 34-35. Although the ALJ did not include any mental limitations in Plaintiff's RFC, *id.*, the ALJ noted that the "residual functional capacity assessment reflects the degree of limitation" that the ALJ found during the 'paragraph B' mental functional analysis at step three, *id.* at 34. This statement indicates to the Court that the ALJ accounted for Plaintiff's mild limitations when he developed the RFC. In addition, at the step four RFC stage, the ALJ conducted an evaluation of Plaintiff's mental limitations and found that, based on Dr. Gallegos' opinion and other factors relating to Plaintiff's lack of mental health treatment, Plaintiff "exhibited normal manner and approach and exhibited only mild depression and some signs of anxiety." AR at 36. The Court finds that the ALJ's overall evaluation of Plaintiff's mental impairments is consistent with the conclusion that Plaintiff does not require mental restrictions in the RFC, and that the ALJ sufficiently described how the evidence supports his conclusion.

To the extent Plaintiff argues that the ALJs' holding with respect to Plaintiff's

mental limitations is not supported by substantial evidence, the Court finds that the evidence that Plaintiff presents, such as his mental status exam, his prescription medication, and his testimony, does not overwhelm the evidence on which the ALJ relied, namely Dr. Gallegos' medical opinion which found that Plaintiff has a relatively normal mental status and an ability to work. *See* AR at 36-37 (citing AR 475-80).

### C. The ALJ's Evaluation of the Severity of Plaintiff's Mental Impairments is Legally Sufficient and Supported by Substantial Evidence

At steps two and three of the ALJ's evaluation of an individual's disability, the ALJ determines whether an individual's mental impairments are "severe" as defined by the regulations, and whether the individual's mental impairment is equal in severity to one of the listings. 20 C.F.R. § 404.1520(a)(4)(ii)-(iii). If the severe impairment meets "*all* of the specified medical criteria" in the listing, the individual will be found to be disabled. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Otherwise, the ALJ will move to step four. When evaluating whether an individual's mental impairment meets the requirements of a listing, the ALJ is "required to discuss the evidence and explain why he found that [the individual is] not disabled at step three," but the ALJ is "not required to discuss every piece of evidence." *Clifton*, 79 F.3d at 1009-10. For individuals with diabetes, the SSA has determined that the "effects of [diabetes], either alone or in combination with another impairment(s), may meet or medically equal the criteria of a listing in an affected body system(s)," including listings for mental impairments,

although diabetes "is not a listed impairment for adults." SSR 14-2p, 2014 WL 2472008, at *6 (June 2, 2014).

Plaintiff argues that because the ALJ failed to evaluate Plaintiff's diabetes symptoms in combination with his other mental health symptoms under SSR 14-2p, the ALJ improperly found that Plaintiff's mental health symptoms were nonsevere and that they did not equal the requirements of one or more of the listings for mental impairments. *Doc. 20* at 22, 23-25. In particular, Plaintiff argues that the ALJ failed to properly consider the Plaintiff's mental status exam, *id.* at 22, 24, his self-reported symptom allegations, *id.* at 22, 25, and evidence of his seizures, *id.* at 22, in combination with his diabetes symptoms.

As Defendant states in its Response, Plaintiff's argument about the ALJ's consideration of Plaintiff's diabetes symptoms is "misplaced." *Doc. 22* at 10. SSR 14-2p does not place any requirement on the ALJ to conduct a separate inquiry into the effect of diabetes on Plaintiff's other mental impairments. SSR 14-2p, 2014 WL 2472008, at *6. Rather, it merely provides examples of the ways in which diabetes may affect various body systems, including cognition and brain functioning. *Id.* The ALJ can use these examples as guidance when evaluating an individual's mental impairments during the normal step three assessment. *Id.* In this case, the ALJ conducted a full step three assessment in which he discussed evidence related to Plaintiff's mental impairments

15

and found that none of Plaintiff's mental impairments were severe. *See* AR at 34. The ALJ also stated that "pursuant to SSR 14-2p," he "evaluated the claimant's Diabetes Mellitus' effect on his bodily system." *Id.* at 35. Finally, the ALJ was under no obligation to discuss every piece of evidence related to Plaintiff's mental functioning, including the evidence identified by Plaintiff in his Motion. *See Clifton*, 79 F.3d at 1009-10. For these reasons, the ALJ's assessment of Plaintiff's mental impairments was legally sufficient.

The ALJ's findings with respect to Plaintiff's mental impairments are also supported by substantial evidence. Plaintiff self-reports a variety of mental health symptoms such as anxiety, *see* AR at 63, 338, depression, *see id.* at 341, problems handling stress, *see id.* at 342, and memory loss, *see id.* at 59, 73. He also self-reports having seizures. *See id.* at 70. There is, however, a general lack of medical evidence that Plaintiff suffers from serious mental health afflictions, *see, e.g., id.* at 473, 479-80, and Plaintiff points to no medical evidence of any recent seizures. Given this lack of medical evidence, the ALJ's conclusion that Plaintiff's mental impairments are not severe, even when evaluated in combination with his diabetes symptoms, is supported by substantial evidence.

D. **The ALJ Did Not Err When He Found Persuasive the Medical Opinion of Consultative Examiner, Alysha Gallegos**

Under 20 CFR § 404.1520c, the persuasiveness of a medical source's opinions depends on five factors: "supportability; consistency; relationship with the claimant; specialization; and other factors, such as 'a medical source's familiarity with the other evidence in a claim.'" *Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533, at *5 (10th Cir. 2021) (quoting, *inter alia*, 20 C.F.R. § 404.1520c(c)). Supportability and consistency are the only two factors that the ALJ must explain when assessing the persuasiveness of a medical source's opinions. *See* 20 C.F.R. § 404.1520c(b)(2). The factor of supportability "examines how closely connected a medical opinion is to the evidence and the medical source's explanations: 'The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions will be.'" *Zhu*, 2021 WL 2794533, at *5 (internal brackets and ellipsis omitted) (quoting, *inter alia*, 20 C.F.R. § 404.1520c(c)(1)). Consistency, by contrast, "compares a medical opinion to the evidence: 'The more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) will be.'" *Id.* (internal ellipsis omitted) (quoting, *inter alia*, 20 C.F.R. § 404.1520c(c)(2)).

When explaining his findings regarding the supportability and consistency of a medical source's opinions under § 404.1520c(b), the ALJ must provide enough detail such that the Court "can follow the adjudicator's reasoning" and determine whether the

"correct legal standards have been applied." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012); *see also Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) (finding that an ALJ's reasons for rejecting a medical opinion must be "'sufficiently specific' to enable [the] court to meaningfully review his findings" (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003))). Although ALJs need not cite to specific record evidence, they must "note[] the evidence upon which [they] relied, and that evidence [must be] specific, and verifiably supported by the record evidence." *See Victoria Jean G. v. Kijakazi*, CIVIL ACTION No. 20-4053-JWL, 2021 WL 4168124, at *5 (D. Kan. Sept. 14, 2021).

Plaintiff argues that if the ALJ should have found Dr. Gallegos' opinion to be unpersuasive because the results of Plaintiff's "markedly abnormal mental status examination" which was administered by Dr. Gallegos, conflicted with Dr. Gallegos' opinion that Plaintiff was able to complete work activities. *See doc. 20* at 25-26. The ALJ, however, provided specific reasons for why he found Dr. Gallegos' medical opinion to be both supported and consistent. *See* AR at 37 (stating that Dr. Gallegos' opinion "is supported by cited [sic] mostly normal mental findings and is consistent with [Plaintiff's] limited, conservative history of mental treatment"). As a result, the ALJ's findings with respect to Dr. Gallegos' opinion are legally sufficient. As Defendant points out, there may be many reasons why the ALJ did not see a conflict between the

results of the exam and Dr. Gallegos' opinion, including that the results of the exam were not as abnormal as Plaintiff contends. *See doc. 22* at 11. The Court will not second guess the ALJ's judgment regarding how much weight to give the evidence of the mental health exam in his determination of the supportability of Gallegos' opinion.

Finally, Plaintiff argues that the ALJ was obligated to contact Dr. Gallegos in order to obtain an explanation of "how/if the MMSE factored into her opinions." *Doc. 20* at 25-26. While an ALJ is required to "contact the medical source" if the medical report resulting from a consultative examination is "inadequate or incomplete," 20 C.F.R. § 404.1519p(b), there is no evidence that Dr. Gallegos' opinion was incomplete. For example, Dr. Gallegos' opinion includes all of the "[e]lements of a complete consultative examination" as described in 20 C.F.R. § 404.1519n(c). *See* AR at 475-80; *cf. Montanio v. Colvin*, Civ. No. 15-551 KK, 2016 WL 9819589, at *11 (D.N.M. Aug. 9, 2016) (finding that the ALJ should have asked the consultative examiner to supplement his report because the report did not contain all of the information required under the regulations). Plaintiff does not present any reason for why Dr. Gallego's opinion was incomplete or inadequate other than Plaintiff's disagreement with Dr. Gallegos' and the ALJ's conclusions regarding the mental status exam. The Court will not find that Dr. Gallegos' opinion is incomplete or inadequate on this basis alone.

19

V.  CONCLUSION

For the foregoing reasons, the Court finds no reversible error in the ALJ's decision. Therefore, the Court DENIES Plaintiff's Motion to Reverse and Remand (*doc. 20*) and AFFIRMS the judgment of the SSA.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**